Ellen S. GODFREY and Diane S. Williams, beneficiaries of the William Swartz Trust, Plaintiffs–Appellants,

v.

Chester T. KAMIN, Herbert B. Olfson and Jenner & Block, an Illinois partnership, Defendants–Appellees.

No. 01–1075.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 2001.

Decided Sept. 19, 2001.

Before Hon. FLAUM, Chief Judge, Hon. MANION and Hon. ILANA DIAMOND ROVNER, Circuit Judges.

## ORDER

Ellen Swartz Godfrey and Diane Swartz Williams (collectively, "plaintiffs") are contingent beneficiaries of a trust (the "trust") created by their father, William Swartz. Plaintiffs sued Chester T. Kamin and Herbert B. Olfson, former trustees of the trust, and Jenner & Block, Kamin and Olfson's law firm, for damages and an accounting under Illinois law. The district court determined that the plaintiffs lacked standing under Illinois law and dismissed the lawsuit, and the plaintiffs appeal. We affirm.

## I.  Background

Plaintiffs are contingent beneficiaries of the trust pursuant to the Third Restatement of William Swartz Trust Agreement, entered into on May 26, 1983. The terms of the trust provided that upon William Swartz's death, his wife, Mary Swartz, was to receive all trust income during her lifetime and such amounts of principal as are necessary for her support and care, as determined by the trustees. The trust agreement provided that on the death of Mary Swartz, her two daughters, the plaintiffs, and her son, Robert Swartz, would divide equally the remaining assets. William Swartz is now deceased, and Mary Swartz, who is still alive, is accordingly the sole income beneficiary of the trust income and principal at the time of this appeal.

Herbert Olfson was William Swartz's attorney from the 1970s through 1992, and was a partner at Jenner & Block. The trust agreement provided that, upon William Swartz's death, Olfson and Robert Swartz would become co-trustees of the trust. Olfson acted as a trustee of the trust from November 11, 1987 through March 9, 1992, when he resigned. Pursuant to the trust agreement, Chester Kamin, also a partner at Jenner & Block, succeeded Olfson as co-trustee. Kamin served as co-trustee from April 1992 through his resignation, on July 9, 1997. The Harris Bank and Trust Company succeeded Kamin as co-trustee.

Plaintiffs contend that the defendants' handling of the trust's investments was imprudent, arguing that they could have turned much higher profits if the trust had been better managed. They also believe the former trustees improperly made loans from the trust for which they then failed to collect a full repayment. Plaintiffs' amended complaint asserted four counts. Count I sought an accounting from the defendants as well as compensatory and punitive damages for breach of fiduciary duty. Count II sought compensatory and punitive damages for breach of fiduciary duty based on the defendants' investment of the trust principal. Count III sought compensatory and punitive damages from Olfson and Jenner & Block based on loans of trust money to Embosograph, the family company (which was managed by Robert Swartz and also represented by Jenner & Block). Finally, Count IV sought to recover the amount of a $1.8 million loan to the Mark William Company, owned by Robert Swartz, as well as punitive damages against Kamin and Jenner & Block.

Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), claiming that the plaintiffs lacked standing to pursue their claims on behalf of the trust. The district court dismissed the first count for failure to

state a claim as a matter of law and dismissed the remaining counts for lack of standing. Plaintiffs appeal both holdings.

## II. Analysis

We review de novo the district court's grant of a motion for judgment on the pleadings, *see Cassidy v. Indiana Dept. of Corrections,* 199 F.3d 374, 376 (7th Cir. 2000), and we begin by considering whether the plaintiffs failed to state a claim as a matter of law in Count I.

■ The district court concluded that plaintiffs' claim for an accounting in Count I of their complaint was unavailable under Illinois statute, 760 ILCS § 5⁄11(a), which provides:

> Every trustee at least annually shall furnish to the beneficiaries then entitled to receive or receiving the income from the trust estate, or if none, then those beneficiaries eligible to have the benefit of the income from the trust estate, a current account showing the receipts, disbursements and inventory of the trust.

Because this language limits a trustee's responsibility to furnish an accounting to beneficiaries "entitled to receive or receiving the income from the trust estate," and because plaintiffs are merely contingent beneficiaries not entitled to receive any income at this time, we agree that an accounting is unavailable under the statute.[1]

■ Plaintiffs, however, contend that they nevertheless have a right to an accounting under Illinois common law.[2]

They cite several Illinois decisions for the proposition that a contingent beneficiary has a common law right to seek an accounting from a trustee that has breached a fiduciary duty. *See, e.g., Burrows v. Palmer,* 5 Ill.2d 434, 125 N.E.2d 484, 487 (Ill.1955); *Giagnorio v. Emmett Torkelson Trust,* 292 Ill.App.3d 318, 226 Ill.Dec. 693, 686 N.E.2d 42, 45–46 (Ill.App.Ct.1997); *Barnhart v. Barnhart,* 415 Ill. 303, 114 N.E.2d 378, 388 (1953). Defendants respond that the plaintiffs have sued former trustees, and the cases cited are thus inapplicable because they all involved current trustees. Generally the claims in those cases alleged that current trustees were unable or unwilling to protect the assets of the trusts. Instead of a claim against the current trustees, the plaintiffs' case is against third parties, the former trustees. Any right for an accounting would have to be against the current trustees.

■ The problem with suing former trustees does not end there. On Counts II through IV, the district court granted the defendants' motion for judgment on the pleadings, concluding the plaintiffs lacked standing to sue under Illinois trust law because they brought a derivative suit on behalf of the trust against former trustees. The initial question, accordingly, is whether the district court was correct in labeling the plaintiffs' suit as a derivative suit. The plaintiffs claim they have brought a direct suit against the former trustees. A review of Counts II, III, and IV of their complaint, however, indicates that all of the damages sought are for harm to trust

---

1. In fact, the trust itself limits the right to approve the trustees' accounts to income beneficiaries, and at this point the plaintiffs' mother, Mary Swartz, is the only income beneficiary of the trust.

2. Plaintiffs also assert that equitable estoppel requires the defendants to provide an accounting, since the defendants promised, and

provided, the desired financial information in the past. This argument does not merit much discussion. Among other things, the plaintiffs have not shown a prejudicial change in position in reliance on the defendants' promises. *See, e.g., Levenfeld v. Clinton,* 1986 WL 4425,-*10 (N.D.Ill.1986). We conclude that equitable estoppel does not apply here.

property. As the defendants note, in light of the plaintiffs' status as contingent remainder beneficiaries, any award of damages would necessarily be awarded to the trust. Until the events occur upon which the plaintiffs' benefits are contingent, they can receive no distribution from the trust. It follows that their claims, although styled direct actions, are actually brought on behalf of the trust. *Cf. Axelrod v. Giambalvo*, 129 Ill.App.3d 512, 84 Ill.Dec. 703, 472 N.E.2d 840, 845 (Ill.App.Ct.1984) ("[Plaintiffs] have no direct title to any trust property. Their interest in the Trust, therefore, is purely derivative."). Accordingly, we affirm the district court's holding that the plaintiffs' claims for compensation are derivative claims.

■ The next question is whether the plaintiffs can bring this derivative suit against former trustees.[3] While there is no Illinois Supreme Court opinion which addresses the issue of a beneficiary's standing to sue a former trustee on behalf of the trust, *Axelrod* is directly on point. In *Axelrod*, the plaintiff trust beneficiaries brought a derivative action against the trust's former managing trustees, who had been replaced after a new board was elected. The *Axelrod* court held the plaintiffs lacked standing to bring a derivative suit against the former trustees because the former trustees were third parties and the current trustees had decided not to pursue an action against them. As the court explained:

An analogy may be drawn to the rights of disinterested directors of a corporation to determine the best interests of the corporation in derivative litigation, where the decision that it is not in the corporations' best interests to maintain the suit has been upheld as sufficient grounds for terminating the litigation.

*Id.*, 472 N.E.2d at 846.

In so holding, *Axelrod* relied in part on the Restatement (Second) of Trusts (1959). The *Axelrod* court looked to Section 282 of the Restatement, which states that a beneficiary may not bring suits in equity except where the "trustee improperly refuses or neglects to bring an action against the third person," or where "the trustee cannot be subjected to the jurisdiction of the court or ... there is no trustee." As the *Axelrod* court noted, comment (e) to Section 282 states that "[i]f the trustee does not commit a breach of trust in failing to bring an action against the third person ... the beneficiary cannot maintain a suit against the trustee and the third person." Since the former trustees no longer held office, the *Axelrod* court determined they were third persons in their relationship to the trust. *See Axelrod*, 84 Ill.Dec. 703, 472 N.E.2d at 846. The court then concluded that the current trustees were exercising prudent business judgment in their decision not to pursue an action against the former trustees, and accordingly a derivative suit on behalf of the trust was unavailable to the beneficiary. *See id.*[4]

---

**3.** With respect to defendant Jenner & Block, plaintiffs claim the law firm acted as a de facto trustee. Defendants claim this argument was never raised before the district court, and was accordingly waived. A review of the record indicates that the claim was indeed raised below, although after regular briefing was completed. In any event, plaintiffs make no suggestion that Jenner & Block is currently a de facto trustee, or that Jenner

& Block would not be a third party if the other former trustees are third parties.

**4.** The court recognized an exception to this rule, not applicable here, where the plaintiffs claim a breach of fiduciary duty by the current trustees for failing to bring suit against the former trustees. *See id.*, 472 N.E.2d at 845 ("In the absence of any claim in the record that the successor managing trustees acted other than in absolute good faith, their

Plaintiffs seek to diminish the import of *Axelrod* because it is an intermediate appellate court opinion. However, this decision is persuasive evidence regarding the Illinois law of trusts:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (quoting *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237–38, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). In this case, after consideration of the *Axelrod* court's reasoning, we are not convinced that the Illinois Supreme Court would rule otherwise. Therefore, we accept *Axelrod* as the correct statement of Illinois trust law.

Although plaintiffs argue strenuously against the *Axelrod* rule, they do not explain why a former trustee is not a third party. Instead, they argue that "[n]o rational reason suggests that a beneficiary should lose standing solely because the trustee resigns." This argument is really an attack on a particular application of the rule against suing third parties, and not an argument that a former trustee is not a third party. Moreover, there is a rational reason why the Illinois courts would treat differently a derivative suit against a trustee who has resigned – namely, the interest of the successor trustee in determining the best interests of the trust.[5]

Plaintiffs claim that *Axelrod* conflicts with comment (e) to Section 199 of the Restatement (entitled "Equitable Remedies of Beneficiary"), which states that where a trustee has been removed by a court and replaced with a new trustee, "[t]he new trustee can maintain a suit against the old trustee for the breach of trust, or such suit can be maintained by the beneficiary." We note that the Illinois courts may interpret Illinois law differently from the Restatement, which is not Illinois law unless the Illinois courts so determine. In addition, although comment (e) to Section 199 could be read to conflict with *Axelrod*, it is also possible to harmonize the commentary with the Illinois Appellate Court's understanding. It is probable that the limitations which can be found in Sections 282, noted above, would also limit the reach of the broad statement that "a suit can be maintained by a beneficiary" contained in comment (e) to section 199: *i.e.*, the trustee must commit a breach of fiduciary duty in failing to bring an action against the third person before a beneficiary can maintain such a suit. Moreover, the actual text of Section 199 is concerned with a beneficiary's right to seek equitable relief against a current trustee, such as removal of the trustee; it does not discuss under what conditions derivative suits for damages may be brought against third parties.

Plaintiffs seek to characterize *Axelrod* as relying entirely on the Restatement, but part of the *Axelrod* court's reasoning was its analogy to corporate derivative suits. In fact, the *Axelrod* court's analogy to corporate derivative suits is in keeping with principles set forth in decisions of the Illinois Supreme Court regarding deriva-

determination to conclude the litigation is binding on plaintiffs.").

**5.** Plaintiffs also offer policy arguments against the *Axelrod* holding. These are readily coun-

tered by contrary policy arguments provided by the defendants. We express no opinion as to which, if any, of these policy considerations might be persuasive to the Illinois Supreme Court.

tive suits. *See, e.g., Metropolitan Sanitary Dist. ex rel. O'Keefe v. Ingram Corp.,* 85 Ill.2d 458, 55 Ill.Dec. 535, 426 N.E.2d 860, 868 (Ill.1981) ("In shareholder derivative actions there must be a wrongful refusal [by the corporation] of the shareholder's demand to take action."). If the Illinois Supreme Court were to find a derivative beneficiary suit analogous to a derivative shareholder suit, a perfectly reasonable conclusion, its precedent in the corporate context would support the *Axelrod* decision.

In light of the Illinois Appellate Court's holding in *Axelrod*, the plaintiffs lacked standing under Illinois law to bring their derivative actions against the defendants, who were third parties in their relationship to the trust. The current trustees declined to bring suit against the former trustees, and plaintiffs do not allege that this was a breach of fiduciary duty. For similar reasons, their claim of an accounting cannot succeed under Illinois common law, nor is an accounting available under Illinois statute. The district court is AFFIRMED.

